Mr. Olson. Mr. Chief Justice, and may it please the Court, Congress expressly exempted from Social Security taxes wages paid to a student who is enrolled and regularly attending classes.  at petitioner's schools are enrolled and pursuing a formal, accredited curriculum that has a rigorous core curriculum, as I said, hundreds of classes, conferences, lectures, laboratory research, written exams, grades, and intensive hands-on clinical patient training under the supervision of faculty members. Mr. Olson, are all institutions that employ residents schools? I don't know whether all the, as I understand the resident program, which is accredited by the Accreditation Council for Graduate Medical Education, does involve an accreditation program which would probably fit where it's taking place, would probably fit the definition of schools. That is certainly not an issue in this case. There are the institutions that we represent. Well, it might be relevant, because it would be unseemly, perhaps, to have residents who are not working at, quote, schools, subject to the FICA tax, and other residents whose training is approximately the same escape the tax. Well, that was a judgment that Congress made. Congress made the exemption with respect to students, and it tied specifically in to someone who is enrolled and regularly attending classes. But you can't give me the reality there. Are all resident programs conducted in schools, or are there resident programs that would not qualify because they take place in institutions that are not schools? The only reason I'm hesitating, Justice Ginsburg, is I don't know the entire universe out there. Every program, resident's program that's been involved in the various cases that have discussed this have been at schools, universities, or colleges. I'm aware of no program that involves residency and resident's programs accredited by the ACGME that is not involved in, does not take place in a school or a university or college. So it could be something out there that I'm not aware of, but I'm not aware of anything of that nature. It is undisputed that these individuals in these resident's programs are enrolled and that they are regularly attending classes by various definitions of the word class. The clinical experience that they are receiving in hospital rooms, in lecture halls, in all circumstances that they're involved in are educational, they are classes, and it is undisputed, undisputed that the purpose of these programs is to educate doctors so that they can achieve board certification and hospital privilege. Sotomayor, are residents supervised their entire 40 to 80 hours? Is there an attending physician standing over their shoulder and looking at what they're doing? Well, there's two parts to that question. The answer to the second part is of course not. There is not a supervising, attending physician standing over their shoulder at every moment, but they are being supervised at all of the time during their residency program. That is to say that the work that they do is under the supervision in that broad sense of an attending physician who looks over what they do, comments on what they do, and so forth. Sotomayor, how I look at this case is, how do you draw the line between a student who is working and a worker who is studying? So the issue for me is, is the Treasury Department's identification of how to draw that line unreasonable? Do we owe them deference? Let's use the example that's been floated around the briefs. The general counsel of the university who takes classes to increase his knowledge, is he a student who is working or is he a worker who is studying? There is – well, the various courts that have considered this have found the statutory provision that Congress has spoken to the subject. It has provided an exemption for students and it has provided its own limitations. You have to be enrolled and regularly attending classes. Sotomayor, why isn't the general counsel who is going to, let's assume, either three classes a week or six hours of classes, he's working 40 hours as general counsel and he's regularly enrolled in classes? Why isn't he part of the institution? So why wouldn't common sense lead you to the conclusion that if someone is working 40 unsupervised hours without an attending physician at their side, taking care of   students, that that's really not a student? That's what the Treasury Department is saying. Well, that is what the Treasury Department is saying. But first of all, you have to be an employee for this provision to apply at all. This provision – You don't think receiving $50,000 or $60,000 a year is enough to make you an employee of someone? No. In fact, the government will say that the amount of remuneration is immaterial. The government says that in its regulations. The IRS says that, and it has said it for many, many, many years. And right from the beginning, the amount of the remuneration has no significance at all. The fact is, as every court that has considered the question has concluded, is that these residents are under supervision. You may be supervised if someone is not standing over your shoulder. If they review at the end of the day or at the beginning of the course what you've encountered, the standards that are being applied during the course of the review. Sotomayor, but why doesn't that assume it's not the general counsel of the university, but a lawyer working in the general counsel's office? He's being supervised by the general counsel, his work's being reviewed, and he's attending classes at night. Well, in the first place, that is a different case. This is a refund action based upon the situate, the facts are on the ground with respect to these residents. That is not the case here. However, that and the other parade of horribles that the government mentions in its briefs, what about the professor, I mean, what about the university president, what about the general counsel, all would be excluded by the predominant requirement, the predominancy requirement, which we're not challenging, which is not involved in this case, and the government hasn't challenged here. These individuals cannot achieve what they need to achieve for board certification and hospital privileges except by having clinical experience. That is the point. Sotomayor, what they want to achieve is a higher long-term pay, but they can go out and work as doctors. They can do very little. The record is very, very clear that almost in no cases in a very, very narrow circumstance can they work as doctors. They won't have hospital privileges. They won't. I understood that 15 percent of the physicians were not board certified. And many of them may be in the military or in circumstances, but the record is examined by the various courts that have considered it, said for all intents and purposes in the modern world, the physicians that are going to be treating you and me in the vast majority of cases will be board certified. It's an enormous impediment. Sotomayor, so how about the architect residents who are working in universities? Are they medical res — like medical residents as well? Well, they may be. I haven't studied whether an architect, if they are in a school — Congress decided what this exemption would cover. It says if you are a student enrolled in a school, university, or college, and you are regularly attending classes, then you would be covered. Now, that — Mr. Olson, why not read that provision, now we are going to the statute, if such a service is performed by a student, et cetera, as saying there is a student status, and the service is distinct from the student status. Take the typical work-study program in a college. That would seem to fit this language to a T. There is a student, and the student is working part-time, but you are — there is no independent significance to the term student as you read the text. That is, the student and the services are all together. It's not, I am a student here, and I perform services there. It's the student is the education is the service. Well, the services are performed for the purpose of receiving an education. As the Internal Revenue Service construed this provision, up until the fact that they lost several cases, was that if your purpose was to achieve, pursue a course of studies, that's the old regulation. If your purpose was to pursue a course of studies, that's the old regulation. But wouldn't this fit the work-study student who is studying philosophy and then he's working in the, say, speech department? I didn't hear that last time. It seemed to me that what came into my mind when I read these words was a work-study program where the student is studying and that's the status of student. The work is separate from that. It's not necessarily to advance the person's education. It's to give the student some money. So that's what I thought. I thought that this was describing student status, okay, and the student is also working for some money. But you seem to say that the service, that it's the student's status is not independent from the service. Absolutely that's true in this case. The students, the service that the students are performing in hospital rooms, looking at patients, listening to lectures, working in laboratories, is a part of what they're getting paid for. So they have to be an employee to begin with in order for this exemption to apply. They have to be, it might be, I don't know whether you have in mind someone being paid by someone outside the school, but this. No, I have in mind a typical work-study program. The student signs up for work-study and may be assigned to work in the administration, helping out with the clerical things there. But the student status is one thing, the services are another. Now, that I assume would be covered that the earnings of the student in the work-study program would not be subject to FICA. Well, the government's got various categories of examples. The situation that you've just described sort of falls close to one of those examples. But this is, that is not this case. The government would say, I would think, that if you are a student, even though your service is unrelated to your education, you would fall within the exemption. I think that's one of the examples that the government gives. I might have guessed that it would come out differently. But in this case, the purpose for the service is education. The goal of the service is education. It's not to earn a living. And the goal of the universities is not to make money. It is to provide. Roberts You keep focusing, Mr. Olson, on this case. And one of the things that I think is important in the tax code is that you not have litigation on each different case, so the different courts are coming out with different rules, and at the end of the day you put one next to the other and it looks pretty hard to tell the difference. So why doesn't it make sense simply to refer to, to defer to the services interpretation? Olson Well, and Roberts Both of you go back and forth with hypotheticals, each of which sort of supports. But this is basically a very familiar situation of an apprentice who is both an employee and both a student, and to try to draw the line in some categorical way doesn't make sense. The only way you can draw the line is to have somebody say this is going to be the line, and if anybody is going to say it, it ought to be the IRS. Olson Well, I know we're in the Supreme Court, but five courts of appeals that considered this said that the language is clear, it does not admit to a categorical exclusion of residents in programs like this. Sotomayor Well, those five courts did it before the new regulation. Olson That's right. And what the government having lost, based upon the words of the statute and the to do with the goals, the purpose, the objective, and the nature of the activity, lost every one of those cases and said, we're going to adopt a regulation that does have the virtue that the Chief Justice mentioned of being categorical. It's the same as saying if you're left-handed, you are not going to be covered by this student exemption, or if you're only doing it during the daytime. Breyer Is it? The answer to Justice Ginsburg's question was uncertain. Suppose a student is working 45 hours a week in the grounds department cutting lawns, and he does, cutting the school lawn, and he earns enough money to help him his way through college. Now, I thought under this that he is not within this statute, because it's 45 hours and not 40. Olson Oh, yes.   So they have gone out with the words student and the word service performed in the statute. Then, for many, many years, they have talked about the employment. It has to be an incident to the study. An incident is the key word. And so now what they've done is interpret their own word incident as saying if it bulks too large in comparison with the studying, it's not incident to the study. It's a separate thing. And that's true whether it happens to be medical school or it happens to be lawn mowing. They can't, they don't want it as so big in comparison to the study that it's not really part of trying to get the study. It's just too big. And they use the 40 for that. Breyer Yes, they have. All right. Now, if you're going to admit the word incident to, if you're saying they have the right to put the word incident to, why don't they have the right to define incident to in part in terms of 40 hours a week? Olson Well, because it's both arbitrary and it's irrational. If what the student is doing, what the individual is doing, the resident is doing, is learning the craft that he needs to perform a doctor. The government is saying Sotomayor Mr. Olson, everybody learns. The government is saying if Sotomayor Aren't you learning today, sitting here and watching this, maybe you're not your own argument, but the arguments before, aren't we learning in every case that we're hearing? Olson Oh, by the way Sotomayor It's, in my mind, difficult to separate out what makes a person or stops a person from learning on a job. Olson Well, the fact is Sotomayor In any job, actually Olson the justices of this Court are exempt from Social Security taxes, so it's a provision. Sotomayor You're not challenging that, are you, Mr. Olson? Olson So you're okay. But Sotomayor I bopped it in, Mr. Olson, for the very reason the residents might want to. Olson Congress decided to provide an exemption for students, and I want to address what Justice Breyer said. Breyer No, no, it didn't, as interpreted. It's not that you see, I concede everything you say. It's a total learning experience and it's a special learning experience. The problem I was having that I wanted your answer to is that they have, for many, many years, said just because it's a pure learning experience and nothing but a pure learning experience, you still can't get this exemption unless the work is incident to that experience, and by incident, we mean it can't bulk too large in respect to the whole. So the problem for you is not that it's not education. Olson That Breyer It's that the work is the education. Olson That last step that you made is just like Humpty Dumpty in Lewis Carroll's Through the Looking Glass. A word is what I say it is. The work that the residents do, the services that they perform, are all incident to the educational process. There's no dispute that the goal is the education, both from the standpoint of the university and from the standpoint of the student, that that is what is accomplished. And what, Justice Breyer, what they've said is because you're doing that, the service is incident to the education until you do it for 40 hours. Then it's no longer incident. So someone who may be a student under the government's interpretation is a student until they work that 40th hour a week on a regular basis, then somehow they're no longer a student. Mr. Olson, there's been a concern expressed that if we accept your position that residents are students, it will have ramifications for other areas of the law, notably the National Labor Relations Act. Suppose the residents want to organize and collectively bargain. If they're students, they can't do that. And let's take the Title VII and the other anti-discrimination in employment statutes. If they're not employed, if they're students rather than employees, then they wouldn't be covered by that legislation. That is the fallacy that the government is making, that you have to either be a student or an employee. That argument is not correct, because in all other respects, these residents are employees. The exemption provided in 3121b10 does not come into play unless you're an employee. So for all those purposes, Title VII, the Fair Labor Standards Act and so forth, those are other statutes that define a term in a certain way. What the code says in 3121b10, that you are an employee, but if you are an employee of a college or a university, and you are a student, which means you're enrolled in classes and regularly taking a program for the purpose of education, then you don't pay FICA taxes. It doesn't have any other implication. And the government's position in that respect, and the argument that's made in the other briefs, are classic red herrings. They distract from the real issue. You don't have to be either an employee or a student. In fact, you have to be both for this exemption to apply. And that is what is happening here. Now, again, this is — there may be circumstances where there might be something that's close to the line, and the government might say, well, you're not really a student, and the government really tried that in the Second Circuit, in the Sixth Circuit, and the Eleventh Circuit, and the Seventh Circuit. And in each one of those cases, the Court, and uniformly, all five circuits, including the Eighth Circuit, until the government decided to change the regulation, to say essentially residents are out. That's basically what this is. Breyer, I looked it up in the dictionary, meaning number 1B of incident is a — an accompanying minor occurrence or — occurrence or condition, minor. In other words, there's the big thing, and then there's the incident. Now, if that's the meaning, well, this is 40 is trying to get at whether it's minor or a whole other thing. That's the same dichotomy that doesn't exist. The person is a student. They're just doing it long and arduously, and they're doing it for several years so that they can be board certified as good doctors in their specialty. The idea that somehow you are a student if you do it for 39 hours, and if you do it for 41 hours, the programs are rigorous. They've been designed by the accreditation programs to be rigorous so that the doctor will see lots of patients, do lots of clinical work, because that, according to all of the record in all of the cases, is where the education takes place. You need the classes, you need the laboratory, but you need to work with patients doing the things that we want doctors to be doing with respect to us when they're certified as a specialist in neurology or whatever it might be. So, Justice Breyer, the idea that — this is a classic definition of not only an arbitrary, but a capricious and irrational regulation. It says that even if you are a student, you're doing the things where you would have to be a student, and you're doing the types of things that would make you a student, and you're doing it for the purpose that would make you a student. But if you do it a little bit too much, you're too much of a student, and therefore you're not a student. Breyer, that's because of the second meaning here. It's very surprising I found first reading the statute in the last case, and now I'm reading the dictionary. And here what it says is something arising or resulting from something else of greater or principal import. So they're trying to work out with that word incident, is the studying of greater or principal import. And what they're saying is when it's 40 hours a week, this other thing, the studying, is not of greater import.  It's of equal import. I submit that that makes no sense at all, because if you're studying and you're doing it for 39 and a half hours, you're a student, and if you do it for 40 and a half hours, all of a sudden you're not doing the same thing, you're not a student. I accept the word incident. Alito, why do you accept the word incident? Incident is not in the statute. No, it isn't. I'm saying for purposes of the statute. Why isn't the answer that the noneducational aspect of the service has to be incidental to what they're doing? Well, that might be also what we're saying. I don't — I'm accepting the word incident for the purposes of this case, that there is no question that the work that's being done, the services that are being performed, Justice Alito, are incident to the education. They are a part of the educational process. They are subservient to the educational process. In fact, they make the educational process. If I may, Mr. Chief Justice, may I reserve the balance of my time? Thank you, Mr. Olson. Mr. Roberts. Mr. Chief Justice, and may it please the Court, FICA's student exemption covers individuals who are predominantly students but perform incidental employment for their schools. It does not cover Petitioner's medical residence. They are full-time employees, and the Treasury Department has reasonably concluded that an employee's paid work does not make him an exempt student, even if he also learns from his job. And that's true for three reasons. First, the text of the student exemption makes clear that it's not a broad exclusion for apprenticeships and other learning jobs. Instead, it's a narrow exemption that applies only to students performing services for a school, college, or university where they are enrolled and regularly attending classes. And second, when employees are working long hours and being paid substantial amounts, they and their employers should be helping to fund the Social Security system. And they should be earning credit towards benefits so that they and their families will have something to fall back on if they become disabled or die. Alitoso, if the question is whether someone is predominantly a student or an employee, why shouldn't we ask why are they enrolled in this program, and why is the institution enrolling them in the program? Why are residents enrolled in the program? Are they enrolled in the program to make money, or are they enrolled in the program either because it's a licensing hurdle they have to clear or they want additional education? And why is the institution hiring them? Is the institution hiring them to get the value of their service, or is it hiring them for educational purposes? It's probably both, Your Honor, but it's not workable to determine student status by looking at a particular case whether the predominant motive or the motive of the employee or the employer is education. Alitoso, in general, why are residents why do medical school graduates become residents? Are they doing that because they want to earn the $40,000 to $50,000 a year that they're paid, or are they doing it for some other reason? I think they're doing it for both reasons, Your Honor, but many, many individuals pursue their jobs for the primary purpose of learning, like judicial law clerks, like other apprentices, but they're not excluded, they're not covered by this exemption. Because they don't work at schools. Because they don't work at schools, colleges, and universities, and they, you know, may not be enrolled in regularly attending classes. And so the Treasury reasonably concluded that because this isn't a general exemption for apprenticeships, that they shouldn't construe it as providing a special exemption for apprentices who happen to be employed by schools, colleges, and universities. And the reason why they're not excluded is because they're not covered by this exemption. Alitoso, what if they were paid $10,000 a year, would it be the same? Yes, if they would, if their work, I mean, here, basically, they have work, and the argument is that that work qualifies them as students, and what the Treasury Department has concluded is that it's going to treat work and study as distinct categories in deciding whether somebody is predominantly a student, and that it's not going to count the work as study, even if there's some educational component to it. And that's reasonable for several reasons, as I said. First, because the statute just isn't a general provision that's designed to cover apprenticeships. And second, because when people are primarily workers and they're working for long hours, they should be covered in participating in the FICA system. And finally, it is, it would be very difficult to determine on a case-by-case basis what's their purpose, what's the employer's purpose, you know, is this job more like study, is this job more like work, and to, on that basis, decide whether that should make them a student. So considering all of those things, the Treasury has decided to draw a bright line and say, study is study, work is work, and if you're not a student independently of that, then your work doesn't make you a student. And the Treasury has also decided that if you're working full-time, then you're predominantly an employee rather than predominantly a student, and you're not covered by the exemption. And in addition, FICA's historical development indicates that the student exemption doesn't cover medical residents, because at the same time that Congress enacted the student exemption, it also enacted a separate exemption for medical interns, and it decided not to include residents in that exemption. And those actions would have made little sense if the student exemption had the scope asserted by Petitioners. And then in 1965, Congress repealed the intern exemption in order to give young doctors an earlier start in building up Social Security coverage. And that repeal also wouldn't have achieved its purpose if many and most residents were covered, were excluded from FICA under the student exemption. These residents are people, they're working between 50 and 80 hours a week. They're working over a long period of time. And they're providing critical patient care with minimal supervision. Roberts What if the school said, you have to get all this clinical experience, but we're going to pay you for the first two hours of the day that you're doing that? Does that change the analysis at all? You seem to be focusing on how many hours they're working. But what if the school says, well, look, we recognize some of this is going to school and some of this is working, so just like the IRS, we're going to have an arbitrary rule and we're going to say, you're being paid for the first two hours. Well, the rule is that the paid work doesn't count towards student status. And it doesn't count whether you're doing it for 4 hours, for 10 hours, or for 40 hours. So in a circumstance where they're only being paid, they're only working for a paid time for a certain amount, that then that work, you would have to look there. Roberts It looks more, if you accept their classification, it looks more like the work is incidental to their status as a student. If you accept the classification and your hypothetical of 2 hours and the other 8 hours. But those, that other work wouldn't necessarily qualify as a course of study either, Your Honor. I mean, if what they're doing is providing services, but providing it. Roberts Presumably you would say it does if they don't pay them anything. No, not necessarily, Your Honor. What the pressure regulations define what a class is and what a course of study is, and the individuals have to be engaging in that to qualify as students and performing or giving somebody something of value. Alito But I thought clinical work could qualify as a course. Is that wrong? Roberts Clinical work can qualify as a course under certain circumstances. But the clinical work that medical students are doing, if you're referring to that, is of an entirely different order than the work. Ginsburg If there's they can be a student in the last year of medical school and they're doing sub-intern level work, that's a clinical program where they would be categorized as students. Alito Yes, it's clinical work, but it's very different than the work that the residents are doing. First, there's the distinction that the residents are getting paid and that the medical students are paying tuition. But secondly, from that, the residents are providing valuable patient care. Medical students are primarily participating in the clinical activities solely in an educational capacity. I can — if I could describe the different things that they're doing. Alito We now have a lot of briefs filed in this Court by — in which a lot of the work is done by students in law school. I assume they're getting credit for that. Is that not a course? Ginsburg They're not getting paid for it. Alito But is it a course? Is it not a course? Ginsburg It might be a course, Your Honor, but they're also engaged in other classes and other activities that make them regularly enrolled and it's part of a degree program so it's one small — the clinical course is one small part of it. Alito I understand all that, but I'm questioning why you're resisting the proposition that clinical work can constitute a course. Ginsburg I'm not resisting the proposition that clinical work can constitute a course. What I'm saying is that when you're being paid to provide services, that doesn't count as a course because the IRS has decided to treat work and study as distinct categories in applying this exemption, and that's a perfectly reasonable distinction. Nothing in the statute precludes them from doing that, and Petitioners concede that it's reasonable to interpret the statute as limited to individuals that are predominantly students. Ginsburg Mr. Roberts, do you know the answer to the question I asked Mr. Olson, that is, are all hospitals with resident programs schools? Roberts No, Your Honor, they're not. First of all, under the IRS's regulations, the IRS defines school colleges and universities to include only institutions whose primary function is the provision of formal instruction. And second of all, on JA-27A, in the record in this case, there's an example of residency programs that are not students. One of the hospitals, the Hennepin County Hospital, that has University of Minnesota residents also has its own residents. And just looking on page 27A, if you have the JA, there's a question, do the Hennepin County residents, are they enrolled in any academic institution of your aware? Not at the present time. So that's an example of one, Your Honor. And that does point out an anomaly about Petitioner's interpretation of the exemption. Medical residents who work for hospitals that are operated by schools, colleges and universities would be exempt from FICA tax, but residents who work for other hospitals wouldn't be exempt, even though their work is equally educational. That's just an illustration of the broader principle that this isn't an apprenticeship exemption. And that's why, because of that, the Treasury has taken this approach to the situation where people are learning on the job. Ginsburg. Mr. Roberts, the Petitioner's brief says twice that there's some question, assuming that we hold that the residents are subject to the FICA tax, there's some question whether, even if they had to pay the tax, whether they would be eligible to receive Social Security benefits or, I take it, credit for a four-quarters employee. There's no question, Your Honor. It's always been the Social Security Administration's position that medical residents are not students exempt from the Social Security Act. The Social Security Administration stated that in a Social Security ruling as far back as 1978, and they continue to adhere to that position. In addition, as a practical matter, the way the Social Security Administration determines whether people get coverage for a particular period under the Social Security Act is they look at the W-2s that come in, and if FICA tax has been paid, then they put them down as being covered under the Social Security Act. So as a practical matter, it works that way as well. As I said before, these workers who are working between 50 and 80 hours a week over many years for substantial salaries are precisely the kind of workers whose employers should be supporting the Social Security system and who should be earning credit towards disability and survivor benefits. And we would ask that the judgment of the court of appeals be affirmed. Thank you. Thank you, counsel. Mr. Olson, five minutes remaining. Thank you, Mr. Chief Justice. With respect to the question that Mr. Roberts was addressing with you, Justice Ginsburg, the record is very unclear. In the Eighth Circuit, the residents may not be eligible for Social Security benefits. It's quite unclear in the other circuits. And I invite your attention, and this is cited in the briefs, to 20 CFR 404.1028, which is a Social Security regulation. It says, if your main purpose is pursuing a course of study rather than earning a livelihood, and it's unquestioned that that is what is happening here, we consider you to be a student and your work is not considered employment. Ms. Josephine, you are not taking issue with what Mr. Roberts just said. That is, in practice, the Social Security looks to see, they look at the W-2, see if the FICA tax was paid, and if it was, then they get credit for Social Security. Well, that may be what they do, and that may be dependent upon what happens with the W-2, which is going to be determined, which has been determined in four circuits as not being payable with respect to the residents' programs. The fact is that the government has taken a position for many, many years, talk about deference for a moment, the national muffler factors, which we understand still to be appropriate to evaluate deference given to an IRS regulation, this is not a contemporaneous regulation. It is something that came along just a couple of years ago. It's a result-oriented regulation. It's basically saying we lost all these cases on the facts in the court of appeals and now we will pronounce that we will win these cases because we know all these residents' programs involve more than one. Sotomayor, we have said that agencies can clarify situations that have been litigated and positions that they've lost on. So why is this any different? Because it — there's not because of any change in circumstances or facts. It isn't a clarification. It is a reversal. Because for all those years, the government said we had this predominance test. If your goal is to pursue a course of study, you are a student. Now, the government is saying if your goal is to produce a course of study, but you do it for 41 hours a week, you are not a student. It is a— Roberts Talking about national muffler, I thought the whole point of Chevron was to get away from that kind of multi-factor, ad hoc balancing. Olson Well, I — this is up to the Court. The Court has never set aside national muffler. The Court cited the national muffler case in the cottage savings case, which is subsequent to Chevron. It cited cottage savings case in the Boeing case just a couple of years ago. So you may tell me that the factors in national muffler are no longer something that you would apply, but they are all sensible factors with respect to whether you would give deference to a regulation that pops up 65 years after the enactment of the statute, after the government has lost five cases on the facts, which are directly relevant to the facts here, and it's a new regulation, and there's been no reliance on it. Roberts If Chevron applies, those considerations are irrelevant, right? Olson You don't need to get to part two, because we submit Chevron would apply and would stop you at step one. Government — the Congress addressed the factor at issue in this case. It said what students are, people who are regularly enrolled — are enrolled and taking classes. To the extent that you get to the second phase, those factors seem to be appropriate to consider. If this is important and if there is some anomaly out there, what the government should have done is turn to Congress, which enacted the regulation that described student and described what the limitations were. It had said nothing to do about a categorical limitation that if you're too much of a student, you're not a student. It is backwards. If there is some anomaly and if the government wants to collect the funds from these four, then it should turn to Congress. There has been no reliance, and the — oh, the intern, the intern anomaly, one of the court of appeals that considered that said it relies completely on non-secretaries. It relies for the interpretation of one statute with the repeal of another statute 45 years ago and draws inference from the legislative history with respect to that, which would — the repeal took place one year after the St. Luke's case. The St. Luke's case, the Sixth Circuit decided that interns were not residents, residents were not interns. Thank you, counsel. The case is submitted. The Honorable Court is now adjourned until tomorrow at 10 o'clock.